Judge Nicholas
dissenting:—This case may, in effect and substance, be fairly and briefly stated thus: — Thomas Shadburne and James Allin executed a joint obligation to said Allin, for the payment of money, who now seeks a recovery of the whole amount from Shadburne, by an action on the bond. There is nothing to shew, that one was principal and the other surety, or to destroy the necessary, usual and legal inference from all joint contracts, that they mutually and equally participated in the benefit of whatever it was, that constituted the consideration of the obligation — even if such matter, had it been shewn, could have any influence in the determination of the question of Shadburne’s liability, which it is not conceded that it could. That Allin cannot have a right to maintain an action on this obligation, against Shadburne, strikes my mind with the force of a self-evident proposition ; but, like most other propositions of that sort, it may be very difficult to prove it, to another mind, by deduction from any regular chain of reasoning. His right to maintain the action, is admitted to be unsustain-ed by any precedent, except that of Debard vs. Crow, which is still in the power of those who made it, to revoke as an authority. The cases referred to of Mien vs. Gray — Sanders vs. Sanders, &c. will be found, on examination, to have no bearing whatever upon this, and not to contain the slightest intimation in favor of the right to recover here. The case must have often occurred, from the awkward efforts of ignorant men to reduce their agreements to writing; and as the books furnish no trace of any adjudication, or even dictum, recognising the right to maintain such action, it is very persuasive evidence of the non-existence of such right. I cannot *75 perceive how it is to be maintained upon any established legal principle, or any of those analogies, upon which it is attempted to be based.
It is attempted to be likened to cases of joint contract, where one of the contractors is a married woman, a lunatic, or an infant. But the resemblance is not discerned, nor can it be admitted. In those cases the sole liability of the other joint contractor is allowed on the ground, that, as to 'the feme, the lunatic, or the infant, it was void, or voidable, from a want of capacity to make an obligatory contract. Here there is no natural or legal incapacity on the part of Allin to contract, but merely the incapacity, common to all, of contracting with himself. Can he, laboring under no disability to contract, after having induced another to enter into a joint contract with him to himself, be permitted to allege his own disability to contract with himself, as a ground of exemption from his share of the obligation, and thereby cast its whole burthen, upon the other, as if it had been the sole contract and separate liability of that other ? Reason and justice will promptly answer no. I think their response, is the response of the law also. If he can be permitted so to do, it is a solitary and anomalous instance, where the law fails to estop a man by his own free and voluntary act.
The legal, as well as natural presumption from this, like all other joint contracts, being that the co-obligors were joint and equal participants in the benefit which induced the giving of the joint obligation, Allin can, in justice, recover from Shadburne, no more than a moiety of the obligation. But if it be sustained as a valid obligation against Shadburne, upon which Allin can recover any thing, he must be permitted to recover the whole. How then is Shadburne to be relieved from the injustice of being compelled to pay Allin that moiety of the debt which Shadburne does not owe, but which if it be due from any one, is due from Allin himself ? There is no process known to the common law, by which he could be redressed. The recovery in this action must be forever final and conclusive between the parties, and after tfw? of the money, in the course of this judi *76 cial proceeding, Shadburne would never be allowed to recoupe any part of it, in any other suit between them concerning it. ft is needless to inquire, whether a court c^ancelT W0!'ld interpose,1 and afford relief, in such case, for even if it be conceded that it would, that could by no means affect the question. The principles of the common law, as expounded in its own courts, are based exclusively upon its own mode and power of action in its own courts,1without reference to the manner in which the matter might be treated of, or acted upon, in, chancery. In looking to results, in order to ascertain the propriety of applying any principle of law so as to create a legal liability in a new case, those results depend, in the estimation of the law judge, exclusively upon the action of his own forum upon the subject. If the result so ascertained, operates manifest and irreparable injustice to one of the parties, that, of itself, conclusively shews, either that the supposed principle is unknown to the law, or that it is not properly applicable to the given case. So here the manifest and .irreparable injustice of permitting Allin to recover from Shadburne, his, A1--lin’s, own share óf a joint liability, is an unanswerable argument, to prove, either that there is no legal principle>such as is here contended for, or that it is not properly applicable to this case.
It is no fair answer to this view of the subject, to.say, the contract created a liability upon Shadburne, though it .creat'ed none upon Allin, and that, therefore, it is only making Shadburne shoulder his own several liability, and not the joint liability of himself and Allin. This is a mere .begging the question — a mere assumption of the . liability of Shadburne, which is itself the thing to be proved. The rational deduction from the circumstances, as presented, to us, is, that Allin received a full share of the consideration upon which the obligation is based; and the true question is, whether the law, under those" circumstances, will permit jiim to treat the obligation as a valid one against Shadburne, and recover its whole amount from him. The fair inference from the face of the contract, which is all that is given us to build even a conjecture upon, is, that Allin and Shadburne, by a *77 joint purchase, or otherwise, incurred a liability, which they supposed to be a joint one, to the executors of William Shadburne, and attempted to evidence that liability in an obligatory form, by executing a joint note to the ■ í»i tp executors, though Alim hunselt was one oí them. II this attempt to create a joint, legal liability, be pronounced idle and inefficacious for any purpose, they each stand severally responsible to the estate of William Shadburne, for their several portions of the debt, as if no such joint liability had been attempted to be created; and no injustice is done any where. But, if it be declared efficacious, so as to enable a recovery against Shadburne for the whole amount, it puts it in the power of Allin to wrong and defraud Shadburne, to the amount of one half the debt; or under the most favorable view that can possibly be taken, drives Shadburne to his action, to recover back from Allin, the amount which Allin will thus have wrongfully collected from him ; which, in a very supposable case, that is of Aliin’s insolvency, by no means mitigates the hardship and injustice of the result. When such are the opposite results of these two modes of treating this contract, or attempt at a contract, it would seem to me, that neither law, reason, or justice, can hesitate in making the election between them.
But it is said, that Shadburne, being bound to know the law, must be presumed to have known that though Allin signed the note with him as a joint obligor, yet he was not bound thereby, and therefore he, Shadburne. understood that he was incurring, and was willing to incur, a sole, several, liability, for the whole debt. This argument, in addition to the objection that it contains an assumption of the thing to be proved, is liable to the further objection, that it is a false deduction from its own premises. For though Shadburne knew that Allin was not bound, it does not follow that he either knew that he would be, or was willing that he himself should be bound, for the whole debt. He might well reply, that he knew that they were both bound, or neither was, and if he had not known, the law would not permit Allin to turn it into a sole liability upon him, he never would *78 have signed a note for the whole. Or he might retort this reasoning on Allin, and say, you knew that where two equally capable and willing to contract, do, for a mutual consideration, enter into a joint obligation, they are anally bound, and if, from any cause, it is legally-inoperative as to one of iis, it must be inefficacious as to the other also ; and as you knew you could not contract with yourself, when you took our joint obligation to yourself, you knew it could have no legal effect, and therefore was willing it should not be obligatory on me. The one process of reasoning is as satisfactory and conclusive as the other, and equally well adapted to a rational result.
Strip the case of the immaterial circumstance of the contract being reduced to writing, and suppose it an attempt to create a joint parol agreement, for a consideration jointly received, to pay Allin, as executor, a sum of money, It will not be pretended by any one, that a recovery could be allowed against Shadburne, upon such-agreement, for the whole amount. The law would pronounce such attempted, joint contract a nullity, and in lieu of it, would create an implied contract upou Shad-burne, to pay his half only of the debt. The same result must follow the contract when clothed in the form of a written obligation. It can acquire no validity from the mere circumstance of its being in writing. The legal impossibility of a man’s making an obligatory agreement for any purpose, by entering with another into a joint contract to himself, applies equally to either mode, and renders such attempt utterly abortive.
The impropriety of making this'writing obligatory upon Shadburne, may probably be further and better illustrated by a few - supposable cases : — A, B and C are desirous that something shall be'done, or left undone by A, and to induce him thereto, B and C are each willing to incur a several responsibility of indemnity, to the extent of one-third the liability; but possessing no better information than Allin and Shadburne had, of the proper mode of drafting legal obligations, they enter into an agreement like this: uWe, A, Band C, promise to ■indemnify A, &c.” Could, A, upon such a covenant, be *79 permitted to recover a full and entire indemnity from B and C ?
Or suppose the obligee in a bond, sign it with another, as joint sureties for the principal. In the event of the obligor’s insolvency, could the obligee recover the whole amount from the other surety ? Or suppose A and B enter into a joint obligation to the wife of A — could A, in the name of himself and wife, recover the whole from B ?
The ready response that must await each of these queries, from every intelligent mind, upon principles of mere abstract justice, is, in my opinion, the response of the law also; and equally forbids the recovery, by Allin, of the \vhole of this debt from Shadburne.
Suppose A, B and C, co-partners in trade; that A sells something to the firm, and receives from B the note of the firm for the payment of the purchase money. Could he recover in an action upon the note against B and C, or either of them ? Certainly not against C, for B had no authority to bind C, as his partner, except by a contract which would be mutually and equally obligatory upon the whole firm. Could he then recover from B the whole amount, as upon his sole and separate obligation, after,'by his acceptance of the note in that form, having recognized B’s authority to usé the name of the whole firm in that way ? It surely cannot seriously be contended that he could. Then I ask for a discrimination to be drawn between that case and this. Every argument which is used to fasten a liability upon Shad-burne, equally applies, and will as necessarily fix it upon B. Nor will it do to postpone the determination of that, or any such supposable case. In the adoption of any new principle, or in the application of any supposed old principle to a new class of cases, we must look diligently around, to see whither it is to lead us. If its destination is inevitable error, we are bound to pause and forbear its application. It is the duty of a judge, to be ever timid in the pursuit of any path where he can find no foot print of a predecessor. I like not the maze into which I think I see that we are to be led by *80 adopting the principles of the opinion delivered by the court, and must, therefore, withhold my assent.
If some effect must, perforce, be given to this contract, and Shadburne rendered liable upon it, much the most legal, as well as equitable, turn to give it, would be to treat Allin’s 'co-executor as sole obligee, and allow a recovery by him, or his representatives, against Allin and Shadburne both. I by no means concede that this could be done, but suggest it as the better and much the most plausible mode of giving effect to the contract, so as to bind Shadburne.